SO ORDERED.

SIGNED this 31st day of July, 2018.



Dale L. Somers
United States Chief Bankruptcy Judge

___

Opinion Designated for Electronic Use, But Not for Print Publication
IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| In Re:<br><br>**JOHN DAVID BOUCEK,**<br><br>     **DEBTOR.** | **CASE NO. 18-40249**<br>**CHAPTER 12** |
| **THE BANK OF TESCOTT,**<br><br>     **PLAINTIFF,**<br><br>v.<br><br>**JOHN D. BOUCEK, et al.,**<br><br>     **DEFENDANTS.** | **ADV. NO. 18-7014** |

### MEMORANDUM OPINION AND ORDER GRANTING THE
### BANK OF TESCOTT'S MOTION TO ABSTAIN AND REMAND

This adversary proceeding is a mortgage foreclosure case that was removed by

Debtor from the District Court of Ottawa County, Kansas. The Bank of Tescott (Tescott

or Bank), the state court plaintiff, moves for abstention and remand,[1] or alternatively, for withdrawal of reference.[2] Debtor opposes the Bank's motions.[3] The Court has jurisdiction.[4]

The Court heard oral arguments on May 21, 2018. Debtor appeared by his counsel, David R. Klaassen. Tescott appeared by Aaron O. Martin and Jacob E. Peterson. The additional defendants, Richard Boucek, Diana Peck, and Jeanette Roberg, appeared by Robert A. Martin. The Chapter 12 Trustee, Carl B. Davis, appeared on his own behalf. The Court took the matter under advisement and is now ready to rule. For the following reasons, the Court grants Tescott's motion to abstain and remand the proceeding to the state court.

**THE REMOVED PROCEEDING**

Tescott filed this foreclosure action in Ottawa County, Kansas District Court on May 24, 2017 (the Foreclosure Case).[5] It seeks, among other things, a personal judgment against Debtor on a promissory note; foreclosure of the Bank's mortgage liens against

---

[1] Doc. 4.

[2] Doc. 5.

[3] Docs. 15 & 16.

[4] This Court has jurisdiction over the parties and the subject matter pursuant to 28 U.S.C. §§ 157(a) and 1334(a) and (b), and the Amended Standing Order of Reference of the United States District Court for the District of Kansas that exercised authority conferred by § 157(a) to refer to the District's bankruptcy judges all matters under the Bankruptcy Code and all proceedings arising under the Code or arising in or related to a case under the Code, effective June 24, 2013. D. Kan. Standing Order No. 13-1, *printed in* D. Kan. Rules of Practice and Procedure at 193 (March 2018). There is no objection to venue or jurisdiction over the parties.

[5] Case no. 2017-CV-000013, District Court of Ottawa County, Kansas.

Debtor's Ottawa County, Kansas real estate; foreclosure of the Bank's security interests in Debtor's personal property; and a judicial sale of all the collateral securing the Bank's note. The additional defendants were named because they may claim some interest in the real estate. Debtor filed his most recent Amended Answer and Counterclaim on August 1, 2017. Debtor asserted the affirmative defenses of breach of contract, offset, unclean hands, waiver, and estoppel. Debtor also alleged counterclaims against Tescott for conversion, tortious interference with contract rights, breach of fiduciary duty, and breach of the duty of good faith and fair dealing,[6] but has recently waived his claims for tortious interference with contract rights and breach of fiduciary duty.[7] On February 27, 2018, Tescott filed a motion for summary judgment on all claims and defenses, and a scheduling hearing on the motion was set for March 26, 2018, before the state court.

Debtor filed his petition under Chapter 12 on March 20, 2018, and filed a notice of the bankruptcy filing in the Ottawa County District Court. He removed the Foreclosure Case to this Court on March 26, 2018, before the state court scheduling hearing. Subsequently, Debtor removed two additional cases that had been filed in the Ottawa County District Court: Case no. 2006-CV-000022 (the Breach of Trust Case); and Case no. 2008-PR-000001 (the Probate Case). These cases are the subjects of separate motions to remand and opinions by this Court, but they are related to this Foreclosure Case

---

[6] The Court reads Debtor's amended counterclaim complaint as seeking a money judgment in an amount in excess of any judgment Tescott might obtain against Debtor.

[7] Doc. 22 at 3-4.

because the factual allegations made in them provide the basis for Debtor's defenses and counterclaims in the Foreclosure Case.

**DEBTOR'S FACTUAL ALLEGATIONS RELATING TO HIS DEFENSES AND COUNTERCLAIMS**

This proceeding and the other two removed actions are facets of a long-running dispute among Debtor, his parents, and his siblings regarding the distribution of family assets. In his notice of removal, Debtor describes the background of his affirmative defenses and counterclaims as follows.[8]

Debtor is one of the four children of Clarence F. Boucek (Frank) and Bernice E. Boucek (Bernice). Frank and Bernice's other children are Richard Boucek (Richard), Jeanette Roberg (Jeanette), and Diana Peck (Diana) (the additional defendants in this action). On April 22, 1989, Frank and Bernice executed a joint, mutual, and contractual will (the 1989 Will) in which they agreed that each would leave to the survivor all property owned by the first to die, and on the death of the survivor, the survivor would leave all his or her property to their children, including Debtor. On July 15, 1996, Frank and Bernice executed an irrevocable trust agreement (the 1996 Trust). The distribution provisions of the 1996 Trust are similar to those in the 1989 Will; however, only a portion of Frank and Bernice's property was ever transferred to the 1996 Trust.

On June 13, 1998, Frank died. Shortly thereafter, the 1989 Will was filed of record, but it was never probated.

---

[8] Doc. 1 at 4-17.

On or about August 3, 2004, Bernice executed a revocable inter vivos trust (the 2004 Trust) that she created with the express intent to disinherit Debtor. It provided that all her property would pass to her children except Debtor. Also on or about August 3, 2004, Bernice executed a pour-over will that would transfer property to the 2004 Trust (the 2004 Will).

On September 8, 2004, in her individual capacity and without consideration, Bernice transferred six tracts of real estate that remained subject to the 1989 Will to herself as the sole trustee of the 2004 Trust. On the same date, as the sole remaining trustee of the 1996 Trust and without consideration, Bernice transferred two tracts of real property that remained subject to the 1996 Trust to herself as the sole trustee of the 2004 Trust.

On September 6, 2006, John filed his petition in the Breach of Trust Case against Bernice individually and as the trustee of the 1996 Trust and the trustee of the 2004 Trust. He asserted three claims: breach of the 1989 Will, breach of the 1996 Trust, and constructive fraud.

Bernice died on January 8, 2008. On January 8, 2008, Richard filed a petition for the appointment of himself as the special administrator of his mother's estate, thereby commencing the Probate Case. He was appointed the same day and was substituted as the defendant in the Breach of Trust Case. On February 19, 2008, Debtor filed his petition for probate of the 1989 Will in the Probate Case. On the same date, Richard and Diana filed their petition for probate of Bernice's 2004 Will in the Probate Case. The

resulting will contest was resolved with the 2004 Will being admitted to probate.

Both the Breach of Trust Case and the Probate Case have been appealed to and decided by the Kansas Court of Appeals and the Kansas Supreme Court. As a result, the ruling that the 2004 Will be admitted to probate has become a final decision, and significant guidance has been given about the issues in the Breach of Trust Case.[9]

**DEBTOR'S FACTUAL ALLEGATIONS REGARDING DEBTOR'S RELATIONSHIP WITH TESCOTT.[10]**

Debtor is a farmer and farms real property located in Ottawa County, Kansas, including the real property which is the subject of the Foreclosure Case. Tescott has been Debtor's main operational lender for many years, including all of the time after Bernice's death. Debtor regularly made disclosures to the Bank regarding his financial condition. As a part of his disclosures, he informed the Bank of his involvement and claims in the Breach of Trust and Probate Cases, and of the conflicting claims he and Richard asserted to the eight tracts of real property that Bernice had transferred to the 2004 Trust.

Tescott has also been Richard's main operational lender and, according to Debtor, Tescott has favored Richard to the detriment of Debtor by taking liens to secure Richard's loans on items that are Debtor's sole property. It is this action that forms the basis for Debtor's affirmative defenses and counterclaims in the Foreclosure Case.

---

[9] The decision of the Kansas Supreme Court holding that the district court erred when granting summary judgment against Debtor in the Breach of Trust Case is reported as *Boucek v. Boucek*, 297 Kan. 865, 305 P.3d 597 (2013).

[10] Doc. 1 at 8-10.

## TESCOTT'S MOTION FOR ABSTENTION AND REMAND, AND DEBTOR'S RESPONSE

Debtor's notice of removal alleges removal is appropriate under 28 U.S.C. § 1452(a), which provides in part that "[a] party may remove any claim or cause of action in a civil action . . . to the district court for the district where such civil action is pending, if such district court has jurisdiction of such claim or cause of action under section 1334 of this title." Section 1334(a) provides that the district court "has original and exclusive jurisdiction of all cases under title 11," and § 1334(b) provides that the district court generally has "original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." The United States District Court for the District of Kansas has exercised authority conferred by 28 U.S.C. § 157(a) to refer to the District's bankruptcy judges all cases under the Bankruptcy Code and all proceedings arising under the Code or arising in or related to a case under the Code.[11]

Tescott does not challenge the basis for removal. However, Tescott contends that the Foreclosure Case is subject to mandatory abstention under 28 U.S.C. § 1334(c)(2), permissive abstention under 28 U.S.C. § 1334(c)(1), and remand under 28 U.S.C. § 1452(b). Debtor responds that neither 28 U.S.C. § 1334(c)(1) nor (c)(2) applies to this case because there is no parallel proceeding pending in any Kansas state court. Debtor also argues that this case should not be remanded.

**ANALYSIS**

---

[11] District of Kansas Standing Order No. 13-1, *printed in* D. Kan. Rules of Prac. & Pro. at 193

## A. 28 U.S.C. § 1334(c)(1) and (c)(2) apply to removed cases.

Debtor's argument that 28 U.S.C. § 1334(c)(1) and (2) do not apply is based on decisions from the Ninth Circuit.[12] But that circuit's interpretation of the abstention subsections does not apply in the Tenth Circuit.

In *Midgard*,[13] the Tenth Circuit BAP noted that "[s]ome courts hold that abstention can never apply to a removed proceeding because: (1) abstention requires two actions (one in state court and one in federal court) or the potential for two actions; and (2) abstaining from hearing a removed case does not send the case back to state court, but rather results in a stay or dismissal of the case."[14] But it went on to say that the majority of courts hold that abstention does apply to removed cases, that two cases are not necessary, and that abstention coupled with remand transfers the removed proceeding to the state court.[15] The BAP adopted the majority position, finding that 28 U.S.C. § 1334(c)(2) does not require the existence of two proceedings and that nothing in the statute prohibits a court from remanding a removed case. A respected commentator observes that a holding that abstention does not apply, resulting in 28 U.S.C. § 1452 being the exclusive statute applicable following removal, is inconsistent with the decision

---

[12] *Security Farms v. Intern'l Brotherhood of Teamsters*, 124 F.3d 999, 1009 (9th Cir. 1997); *Schulman v. State of Cal. (In re Lazar)*, 237 F.3d 967, 981-82 (9th Cir. 2001).

[13] *Personette v. Kennedy (In re Midgard Corp.)*, 204 B.R. 764 (10th Cir BAP 1997).

[14] *Id*. at 773.

[15] *Id*. at 774.

of the United States Supreme Court in *Things Remembered*.¹⁶ This Court therefore finds that the abstention subsections of 28 U.S.C. § 1334(c) apply in this removed proceeding.

### B. The elements of mandatory abstention are present.

The mandatory abstention statute that applies to bankruptcy jurisdiction, 28 U.S.C. § 1334(c)(2), provides:

> Upon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district court shall abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction.¹⁷

The section applies only to proceedings that are related to a case under title 11. "A proceeding is 'related to' a bankruptcy case if it could have been commenced in federal or state court independently of the bankruptcy case, but the 'outcome of that proceeding could conceivably have an effect on the estate being administered.'"¹⁸ "Mandatory abstention applies when all of the following elements are present: (1) the motion to abstain was timely; (2) the action is based on state law; (3) an action has been commenced in state court; (4) the action can be timely adjudicated in state court; (5) there

---

¹⁶ 1 *Collier on Bankruptcy*, ¶ 3.05[3] at 3-77 to 3-78 (Richard Levin & Henry J. Sommer, eds.-in-chief 16th ed. 2018) (citing *Things Remembered, Inc., v. Petrarca*, 516 U.S. 124 (1995)).

¹⁷ 28 U.S.C. § 1334(c)(2).

¹⁸*Midgard*, 204 B.R. at 771 (quoting *Gardner v. United States (In re Gardner)*, 913 F.2d 1515, 1518 (10th Cir. 1990)).

9

is no independent basis for federal jurisdiction other than bankruptcy; [and] (6) the matter is non-core."[19]

The first element is present. The motion was filed 21 days after the notice of removal. Judge Nugent has found that a motion for abstention and remand filed 21 days after the notice of removal was timely.[20] This Court's local bankruptcy rules require a motion to remand to be served within 21 days following the filing of the notice of removal.[21] Tescott's motion was timely.

The second and third elements are present. Tescott's claim against Debtor, Debtor's affirmative defenses, and Debtor's counterclaims are based exclusively on state law. The Foreclosure Case was initially filed in state court.

The fourth element — whether the case can be timely adjudicated in state court — requires extended discussion. "The burden of proving timely adjudication is on the party seeking abstention."[22] "Timely adjudicated" is not defined in the statute. When determining timeliness, case law focuses on "whether allowing an action to proceed in state court will have any unfavorable effect on the administration of a bankruptcy case."[23]

---

[19] *Telluride Asset Resolution, LLC, v. Telluride Global Development, LLC (In re Telluride Income Growth LP)*, 364 B.R. 390, 398 (10th Cir BAP 2007).

[20] *Western Credit, Inc., v. Shareholders of Rosland Livestock, Inc. (In re Cooper)*, 2016 WL 3564409 at *2 (Bankr. D. Kan. June 22, 2016).

[21] D. Kan. LBR 9027.1(b) (March 2018).

[22] *Midgard*, 204 B.R. at 778.

[23] *Id. See* 1 *Collier on Bankruptcy*, ¶ 3.05[2] at 3-75 ("The few cases considering the issue hold that timeliness must be referenced against the needs of the title 11 case, rather than against an absolute

The relevant factors as identified by the Tenth Circuit BAP are "(1) backlog of the state court and federal court calendar; (2) status of the proceeding in state court prior to being removed . . . ; (3) status of the proceeding in bankruptcy court; (4) the complexity of the issues to be resolved; (5) whether the parties consent to the bankruptcy court entering judgment in the non-core case; (6) whether a jury demand has been made; and (7) whether the underlying case is a reorganization or liquidation case."[24]

Concerning the first timeliness factor, there is no significant backlog of cases in this Court. At oral argument, the parties disputed the existence of a backlog in the state court, with Debtor's counsel identifying some cases pending there that have been awaiting a decision, and Tescott's counsel arguing that the case can be timely adjudicated if remanded. Debtor filed a post-hearing brief providing additional credible facts in support of his claim of a significant backlog.[25] With respect to the second and third factors, discovery has not been commenced, but Tescott filed a motion for summary judgment on Debtor's affirmative defenses and counterclaims before the removal. Since the removal, Debtor has responded to that motion. After Tescott files a reply brief, the motion will be ready for decision, whether the case proceeds in this Court or is remanded. The fourth factor concerns the complexity of the proceeding. Debtor's counterclaims, although not legally complex, are based on complex facts, but a ruling on the motion for

---

time guideline.").

[24] 204 B.R. at 778-779.

[25] Doc. 22 at 2-3.

11

summary judgment may simplify the case. Further, this Court is well versed in Kansas law relating to the collection of notes and the foreclosure of mortgages and security interests, and is very familiar with the functioning of banking relationships. As to the fifth factor, Tescott has not consented to this Court's entry of a judgment on the noncore claims,[26] so if the proceeding is not remanded, the Court would be required to submit suggested findings of fact and conclusions of law to the district court for its review and entry of a judgment. The procedure for such review is established by Federal Rule of Bankruptcy Procedure 9033. It provides for written objections to the findings, and responsive briefs, followed by de novo review, with the possibility of additional evidence. The review could take significant time. As to the sixth factor, no party has demanded a jury trial. Finally, this is a reorganization case, and the issues to be resolved in the Foreclosure Case, including Debtor's personal liability to Tescott and Tescott's rights in Debtor's real and personal property, will significantly impact the terms of any proposed plan, and perhaps make a successful plan impossible. The proposal of a meaningful reorganization plan could likely be delayed until the Foreclosure Case is resolved.

---

[26] Fed. R. Bankr. P. 9027(e)(3) provides that a party shall file a statement indicating whether it consents to the entry of a final judgment by the bankruptcy court within 14 days after the filing of the notice of removal. In this case, Tescott included a statement of non-consent in its motion to remand, filed 21 days after the notice of removal. Debtor argues that this non-compliance with the 14-day rule resulted in a waiver of the right to withhold consent, but provides no authority in support. The only case cited by Debtor found non-compliance, but no waiver. *Schwab Industs., Inc., v. Huntington Nat'l Bank (In re SII Liquidation Co.)*, 2014 WL 5463883, *9 (Bankr. N. D. Ohio Oct. 24, 2014). Tescott cites *Barge v. Western S. Life Ins. Co.*, 307 B.R. 541, 545-46 (S.D. W. Va. 2004), which held that a party moving for remand did not waive the argument that the proceeding was non-core by failing to file a statement within the Rule 9027(e)(3) time limit. The Court holds that Tescott has not waived its right to withhold consent to the entry of a judgment by this Court on non-core matters.

After considering all of these factors, the Court finds the timeliness element is satisfied. Although this Court might be able to enter suggested findings of fact and conclusions of law before the state court would enter a final decision, such suggestions by this Court would be only the first step in reaching a final decision. The Court is confident that the parties and the state court will devote themselves to an expeditious resolution of the Foreclosure Case because of its significant impact on this bankruptcy case.

The fifth element required for mandatory abstention is present. There is no federal jurisdiction other than bankruptcy. The parties are not of diverse citizenship, and none of the causes of action arose under federal law.

As to the sixth element required for mandatory abstention, the Court concludes that all the claims in the Foreclosure Case are non-core. The case satisfies the definition of related-to proceedings. It was filed in state court, but the outcome will have an effect on Debtor's Chapter 12 bankruptcy case. The Court does not accept Debtor's argument that the Foreclosure Case became a core proceeding when it was removed. Assuming that Tescott will file a proof of claim or Debtor will file one on its behalf, upon such filing, Tescott's petition for a judgment against Debtor would become a core proceeding, a cause of action that arises under the Bankruptcy Code.[27] To that extent, the Court agrees with Debtor that after removal, the Foreclosure Case would become a core proceeding. However, Debtor's counterclaims are related-to proceedings, and they do not become

---

[27] 28 U.S.C. § 157(b)(1)(B).

core proceedings after removal. "Related proceedings 'include . . . causes of action owned by the debtor which become property of the estate pursuant to 11 U.S.C. § 541.'"[28]

This raises the question whether the elements for mandatory abstention are present when the removed action includes both core and non-core claims. In *Cooper*, Judge Nugent held that a removed foreclosure action in which the debtor asserted federal counterclaims was non-core.[29] For purposes of mandatory abstention, the Court will follow Judge Nugent's decision. The removed Foreclosure Case is considered non-core, so the sixth element of mandatory abstention is present.

The Court therefore finds that Tescott has shown that all of the elements required for mandatory abstention are present in this case. Further, the Court observes that abstaining from ruling on the Foreclosure Case will not have an unfavorable effect on the administration of the bankruptcy case. Although this Court believes it could decide the merits at least as quickly as the state court and that it could correctly apply state law, abstention is appropriate given Tescott's non-consent to this Court's entry of a judgment on the non-core claims.

The Court therefore concludes that mandatory abstention is applicable.

---

[28] *Midgard*, 204 B.R. at 771 (*quoting Celotex Corp. v. Edwards*, 514 U.S. 300, 307 n. 5 (1995)).

[29] *In re Cooper*, 2016 WL 3564409 at *2. However, the Sixth Circuit BAP has recently held that a proceeding that includes core and non-core claims which "were inextricably intertwined with the bankruptcy case and would not exist but for the bankruptcy" should be considered core such that mandatory abstention is not applicable. *Giese v. Lexington Coal Co. (In re HNRC Dissolution Co.)*, 585 B.R. 837, 844-47 (6th Cir. BAP June 1, 2018). This case is distinguishable from *Giese* since the non-core counterclaims exist independently of the bankruptcy case.

**C. Permissive abstention is appropriate even if mandatory abstention does not apply.**

If the Court is wrong and mandatory abstention is not applicable, the Court would nevertheless abstain under 28 U.S.C. § 1334(c)(1), which provides for permissive abstention as follows:

> Except with respect to a case under chapter 15 of title 11, nothing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11.

Permissive abstention applies to core and non-core proceedings, including those non-core proceedings within the ambit of mandatory abstention. "Even if abstention is not mandatory, § 1334(c)(1) permits a bankruptcy court to exercise its discretion to abstain when doing so would be in the interest of justice, or in the interest of comity or respect for state law."[30] "The primary concern should be whether the federal bankruptcy objectives will be properly served if the bankruptcy court cedes jurisdiction to a state court or whether duplication of effort and delay may be a consequence of abstention."[31]

Federal courts have developed a laundry list of relevant factors to consider in deciding whether to permissively abstain. In *Lunt*, this Court listed them as follows:

> 1. the effect or lack of effect on the efficient administration of the estate if a court abstains;
> 2. the extent to which state law issues predominate over

---

[30] *In re Cooper*, 2016 WL 3564409 at *2.

[31] 1 William L. Norton III, *Norton Bankr. L. & Prac. 3d*, § 8:6 at 8-28 (Thomson Reuters 2018).

15

bankruptcy issues;
3. the difficulty or unsettled nature of the applicable state law;
4. the presence of a related proceeding commenced in the state court or other nonbankruptcy court;
5. the jurisdictional basis, if any, other than 28 U.S.C.A. § 1334;
6. the degree of relatedness or remoteness of the proceeding to the main bankruptcy case;
7. the substance rather than form of an asserted "core" proceeding;
8. the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court;
9. the burden on the bankruptcy court's docket;
10. the likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties;
11. the existence of a right to a jury trial;
12. the presence in the proceeding of nondebtor parties; and
13. any unusual or other significant factors.[32]

The relevance of the factors will depend on the particular circumstances of each case.[33] When most of the criteria for mandatory abstention are present, permissive abstention should be seriously considered.[34]

As to the first factor, the Court is convinced that abstaining and remanding this proceeding to the state court will not necessarily delay Debtor's bankruptcy case. This is because of the cumbersome and lengthy procedures that are necessary when a party does not consent to the bankruptcy court's entry of a judgment in non-core matters. For factors

---

[32] *In re Lunt*, 2011 WL 1656404 at *1-2 (Bankr. D. Kan. May 2, 2011).

[33] 1 *Norton Bankr. L. & Prac. 3d*, § 8:6 at 8-28.

[34] *Id.*

two and three, state law clearly predominates, but the issues are not difficult.  As to factor four, the Foreclosure Case is related to the two other removed cases which the Court is determining in separate opinions should be remanded to the state court.  As to factor five, there is no federal basis for jurisdiction other than 28 U.S.C. § 1334.  As to factor six, the Foreclosure Case is directly related to Debtor's main bankruptcy case, as much of Debtor's plan of reorganization will depend on the outcome of the liability aspects of that litigation.  As to factor seven, the substance of the core claims (Tescott's claims against Debtor and his property) is claim adjudication.  As to factor eight, this proceeding involves both core issues (Debtor's liability to Tescott and Tescott's interest in Debtor's property) and non-core matters (Debtor's counterclaims), but the core and non-core matters cannot be feasibly separated, since Debtor's defenses to the core matters involve his counterclaims.  However, once the state court determines the liability of the parties and the extent of Tescott's interest in Debtor's property, its findings can be utilized in the bankruptcy case.  As to factor nine, this Court's docket can accommodate the proceeding if abstention is denied.  As to factor ten, Debtor's removal of the Foreclosure Case promptly after filing his bankruptcy petition might have amounted to forum shopping, but it is not unusual for debtors to file bankruptcy after state court foreclosure proceedings have been filed against them.  As to factor 11, none of the parties have requested a jury trial.  As to factor 12, the only non-debtor party taking a significant role in the Foreclosure Case is Tescott, and even if the case is remanded, Tescott will continue to be involved in the main bankruptcy case.

A peculiar factor supporting abstention in this case is that this Court routinely grants relief from the automatic stay to allow secured creditors to continue litigation of foreclosure actions against debtors in state court. To protect the debtor, the estate, and the administration of the bankruptcy case, such stay relief is customarily granted through the state court's entry of a judgment, but not to permit execution on the judgment. Nothing in this Foreclosure Case would support treating it any differently.

When weighing these factors, the Court places the most emphasis on the efficient administration of the bankruptcy estate, the direct relationship of the outcome of this proceeding to Debtor's plan of reorganization, and the ability of this Court to grant partial relief from the stay to allow the state court to proceed to enter a judgment. These factors support granting the motion to abstain. Debtor cannot propose a realistic plan of reorganization until his liability to Tescott and Tescott's interest in Debtor's property are determined. The Court finds that the most efficient route to such a judgment is through abstention and the remand of this Foreclosure Case to the state court. The Court therefore grants the motion to abstain under 28 U.S.C. § 1334(c)(1), even if for some reason mandatory abstention is not applicable.

### D. Remand

Subsection (b) of 28 U.S.C. § 1452 provides for the remand of claims and causes of action that have been removed to a federal district court. It provides: "The court to which such claim or cause of action is removed may remand such claim or cause of action on any equitable ground." One equitable ground is a finding that the court should or must

abstain under 28 U.S.C. § 1332(c)(1) or (2).[35] The Court therefore grants remand under 28 U.S.C. § 1452(b) since it has found abstention is required under 28 U.S.C. § 1334(c)(2), or is at least appropriate under § 1334(c)(1).

**CONCLUSION**

For the foregoing reasons, the Court grants Tescott's motion to abstain and to remand this adversary proceeding to the District Court of Ottawa County, Kansas. Tescott's motion for withdrawal of reference is therefore moot. By this order, jurisdiction of the Foreclosure Case is returned to state court, but the bankruptcy stay remains in place. In order to proceed to determine Debtor's liability or to foreclose on his property in the state court, Tescott must obtain relief from the stay.[36]

**IT IS SO ORDERED.**

# # #

---

[35] In addition, courts consider a number of factors when deciding remand questions, which one commentator says include the following:
1. Whether judicial resources will be duplicated;
2. What is the most economical use of judicial resources;
3. What will be the effect of remand on the administration of the bankruptcy estate;
4. Whether questions of state law, which are better addressed by state court, are involved;
5. Whether considerations of comity exist;
6. The degree of prejudice, if any, to the involuntarily removed party;
7. Whether the possibility of an inconsistent result is lessened by remand; and
8. The expertise of the court where action originated.

1 *Norton Bankr. L. & Prac.*, § 7.2 at 7-14 to 7-16.
These factors are similar to those considered when evaluating permissive abstention under 28 U.S. C. § 1334(c)(1), and their application would further support remand of the Foreclosure Case to state court.

[36] The Court notes that Tescott has moved for stay relief (Case no. 18-40249, Doc. 46), which Debtor opposes, and a hearing on that matter is now set for August 28, 2018.